RECORD NO. 13-4695

In The
# United States Court Of Appeals
# For The Fourth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff – Appellee,*

v.

**PHILLIP RADFORD POTTER,**

*Defendant – Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ABINGDON

———————

**BRIEF OF APPELLANT**

———————

| | |
|---|---|
| **Joseph W. Rasnic** | **Ajay J. Alexander** |
| ATTORNEY-AT-LAW, PLC | Steven R. Ramseyer |
| 33701 Main Street | OFFICE OF THE |
| Jonesville, VA  24263 |    UNITED STATES ATTORNEY |
| (276) 346-4288 | 180 West Main Street |
| | Suite B19 |
| | Abingdon, VA  24210 |
| | (276) 628-4161 |
| *Counsel for Appellant* | *Counsel for Appellee* |

Gibson Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA  23219
804-249-7770 ♦ www.gibsonmoore.net

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES .................................................................................. iii

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION .....................................................................1

STATEMENT OF THE ISSUES.............................................................................1

STATEMENT OF THE CASE.................................................................................2

    1.    The Nature of the Case...................................................................2

    2.    The Course of Proceedings ............................................................2

    3.    The Disposition Below...................................................................2

STATEMENT OF FACTS .......................................................................................3

SUMMARY OF ARGUMENT ................................................................................4

ARGUMENT ............................................................................................................4

    THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW
    TO CONVICT THE DEFENDANT OF CONSPIRACY TO PASS
    FRAUDULENT CHECKS AND OF KNOWINGLY AND
    INTENTIONALLY UTTERING FRAUDULENT CHECKS. ......................4

    Standard of Review...................................................................................4

    Discussion of the Issue .............................................................................4

CONCLUSION .......................................................................................................10

REQUEST FOR ORAL ARGUMENT ..................................................................10

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

Burks v. United States
    473 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) ..........................................4

**STATUTES:**

18 U.S.C. § 371 ................................................................................................1

18 U.S.C. § 514 (a)(2) ......................................................................................1

28 U.S.C. § 1291 ..............................................................................................1

**RULE:**

Fed. R. App. P. 4(b) .........................................................................................1

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This Appeal is from the conviction of Phillip Potter for violations of 18 U.S.C. § 371 (conspiracy to defraud by passing counterfeit or fraudulent checks – one count), and 18 U.S.C. § 514(a)(2) (passing counterfeit checks – five counts). All of these events were alleged to have occurred in the Western District of Virginia within the jurisdiction of the district court. This court has subject matter and appellate jurisdiction pursuant to the foregoing statutes and pursuant to 28 U.S.C. § 1291 and Rule 4(b) of the Federal Rules of Appellate Procedure (to review a criminal conviction). Appellant Potter was found guilty on all counts charged in a jury trial that took place on June 10 and 11, 2013. He was sentenced by the district court in a Judgment Order dated September 9, 2013, and noted his timely appeal to that decision that same day. The appeal is from a final judgment that disposed of all the claims.

## STATEMENT OF THE ISSUES

Whether the evidence was sufficient as a matter of law to support Defendant's conviction in the District Court?

1

## STATEMENT OF THE CASE

1. **The Nature of the Case**

The government contends that Defendant unlawfully conspired with others to pass fraudulent or counterfeit checks and actually passed or uttered five such counterfeit checks, all at the same time at a Walmart store in Bristol, VA. The government contends that Defendant Potter was recruited by Richard Necessary, an acquaintance of Potter's, and Lee Roy Frazier, on December 3, 2012, to cash the fraudulent checks.

2. **The Course of Proceedings**

The trial of Phillip Potter commenced on June 10, 2013, and was concluded on June 11, 2013. Witnesses testified and at the conclusion of the trial the case was given to the jury to deliberate its verdict.

3. **The Disposition Below**

The jury returned a unanimous verdict of guilty on all six counts as to Defendant Phillip Potter. On September 9, 2013, Potter was given a sentence of three years of probation on each count to run concurrently.

## STATEMENT OF THE FACTS

Defendant Phillip Potter was charged along with 70 other individuals in a 142 - count indictment filed on March 11, 2013. A superseding indictment as to Potter and others was filed on May 6, 2013. (J.A. at 16-54) During the two day trial commencing on June 10, 2013, the government introduced evidence that Phillip Potter had been approached by his friend Richard Necessary along with Lee Roy Frazier with the proposition that he could "help" employees of Averitt Trucking Company by assisting in the cashing of Comdata checks ("Comchecks"). (J.A. at 141-144; 101-102) Potter was to receive a fee per check for his participation and was told that the rest of the money would be delivered to the remote Averitt employee. (J.A. at 98-99; 101-102)

Potter accompanied Frazier and Necessary to a Walmart Store in Bristol, VA, where Potter cashed five Comdata checks in varying amounts between $235.75 and $245.15, all within a span of less than 10 minutes. (J.A. at 52)

The overall scheme was rather extensive, beginning with Tina "Courtney" Gillett, who directed the operation and recruited several individuals to assist her in cashing these checks. (J.A. at 94-96) These recruits, in turn, approached others to assist them until the total number of participants exceeded seventy. Phillip Potter, the appellant, dealt only with Frazier and Necessary, as detailed in Government's Exhibit 6. (J.A. at 200)

3

## SUMMARY OF ARGUMENT

The Government's evidence was insufficient as a matter of law to sustain convictions of conspiracy to pass fraudulent checks and knowingly and intentionally uttering fraudulent checks. There was no evidence presented by the Government that either Phillip Potter or those co-defendants who directly recruited him had any knowledge that they were involved in anything illegal, therefore there could be no intent to defraud. Even when the evidence in this case is viewed in the light most favorable to the government, reasonable people cannot differ that the evidence was insufficient to have convicted the Defendant as charged.

## ARGUMENT

**THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT THE DEFENDANT OF CONSPIRACY TO PASS FRAUDULENT CHECKS AND OF KNOWINGLY AND INTENTIONALLY UTTERING FRAUDULENT CHECKS.**

### Standard of Review

The standard of review as to the sufficiency of evidence supporting a conviction is whether there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision to convict. <u>Burks v. United States</u>, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

### Discussion of the Issue

It is undisputed that on December 3, 2012, Phillip Potter accompanied Richard Necessary and Lee Roy Frazier to a Walmart store in Bristol, Virginia, and

4

on that day cashed five Comdata Comchecks made out to Potter in amounts ranging from $235.75 to $245.15. (J.A. at 52)  It is also undisputed that the checks were made payable to Potter, that he used a valid form of ID when cashing the checks, and that he endorsed the back of the checks with his own signature. (J.A. at 144) The only issue in dispute is whether the Defendant cashed these checks with fraudulent intent, i.e., whether he knew at the time he cashed the checks that they were fraudulent (i.e., not authorized by Comdata or the trucking company). The Comdata Checks cashed by Potter were not counterfeit; they were actual Comdata financial instruments or documents. (J.A. at 67)  The checks weren't stolen; these instruments are readily available at truckstops and convenience stores (J.A. at 58) and there are no system checks in place to prevent anyone from obtaining them. The system itself anticipates that the payee – the person actually cashing the checks – is the person who typically will "fill in the blanks" before cashing it. (J.A. at 59) The checks can also be assigned to a friend or family member. (J.A. at 66) In other words, ANYONE – regardless of who they are or where they work – can legitimately cash a Comdata check as long as it is has the proper authorization code. The checks are not limited to employees of the trucking companies. (J.A. at 66-67)  These authentic "papers" are legitimized when they are assigned an authorization code which stores and cashing centers are supposed to verify before negotiating them. The five checks cashed by Phillip Potter were fraudulent because

5

they were not authorized by the appropriate entity and therefore did not contain authentic authorization codes which would have been necessary to validate the checks. (J.A. at 65-66)

Phillip Potter had no way of knowing that the authorization codes entered on the checks were not valid; as a matter of fact, the only two individuals with whom Potter dealt – Richard Necessary and Lee Roy Frazier – according to the testimony of each one of them under oath at trial stated that even THEY did not know that the checks were not valid and they did NOT know that they were doing anything illegal at the time they recruited Potter. Evidently even the Walmart cashier – not charged in this matter – was of the same mindset because she never took the steps necessary to verify the codes that appeared on these five checks and routinely cashed them, all within a span of less than 10 minutes.

Potter's friend Richard Necessary had been approached by Necessary's uncle Paul Bishop who told him "he knew a lady that needed help cashing checks, and ….. that it was legal to cash them." (J.A. at 136) Necessary was subsequently contacted by a woman named Courtney[1] who advised him "[t]hat she worked for a trucking company and wasn't able to cash the checks at Walmart due a bad check she had wrote, and needed someone to cash her payroll checks for her." (J.A. at

---

[1] The woman who identified herself as "Courtney" is the lead defendant Tina Gillett according to her boyfriend and co-defendant Leroy Frazier, Jr. (J.A. at 94) See also Government Exhibit 6. (J.A. at 200)

6

136) Afterwards, early on December 3, 2012, Necessary was picked-up by Courtney's (Tina Gillett) boyfriend Leroy Frazier who transported Necessary to the Walmart near I-81at Exit 7 to cash four checks. (J.A. at 138)

After another phone call from Gillett asking Necessary if he "knew anyone else who would be interested," Necessary approached his friend Phillip Potter. (J.A. at 141) According to Necessary, Potter "hesitated" and "told me he wasn't sure that it was legal." (J.A. at 142) After Necessary "reassured" Potter that it was legal (J.A. at 142), Potter accompanied Necessary and Frazier to the same Walmart later that same day where Frazier prepared five checks and gave them to Potter to cash. (J.A. at 144)

On cross-examination, Necessary testified that he himself thought that cashing the checks was legal based on what his uncle told him; that he reassured Potter that it was legal; and that he was reassured himself since "[e]verything seemed to be fine because the checks went straight through." (J.A. at 158) On re-cross, Necessary stated the following:

> Q To clarify, Mr. Necessary, at the time you cashed the checks you didn't know they were illegal; you thought they were legal?
>
> A Yes. At the time I cashed them I didn't know it was illegal.

7

>        Q     You found out after the fact that you cashed illegal checks and that's why you pled guilty?
>
>        A.    Yes.

(J.A. at. 160)

Likewise, on cross-examination Leroy Frazier testified that on the night he took Phillip Potter to cash checks at Walmart in Bristol, VA, he also thought that everything was legal:

>        Q     All right. But at the time on December 3rd you still thought it was legal, correct?
>
>        A     I was still under that assumption, yes.
>
>        Q     As far as you know, the people that you drove to cash checks thought it was legal; is that fair?
>
>        A     Yes
>
>        Q     So, it wasn't until later that you found out it was illegal?
>
>        A     Yeah.  For sure, a lot later. But I started having suspicions.
>
>        Q     But on that night you thought it was legal and they thought it was legal; is that fair?
>
>        A     Yes.
>
>        Q     It was after you found it was illegal that's why you decided to enter a guilty plea; is that correct?
>
>        A     Yes.

(J.A. at 107)

8

The government did not produce a single witness that could testify that Phillip Potter knew or even had reason to know that he was participating in anything illegal. Government witnesses testified that Potter only met Lee Roy Frazier that day; that Richard Necessary had successfully cashed checks on a previous occasion; and that Potter received assurances from both that the endeavor was legitimate. (J.A. at 142)  Both Necessary and Frazier testified that they only learned afterward of the illegality of their actions and entered guilty pleas on that basis. (J.A. at 160; J.A. at 107)  Frazier had a more direct connection to his girlfriend Tina "Courtney" Gillett – the mastermind behind the scheme – and yet he was completely unaware on December 3, 2012, that the checks he was cashing and recruiting others to cash were fraudulent instruments. (J.A. at 107)

All of the above is consistent with Potter's written statement to Agent Greg Watson on February 22, 2013, wherein Potter stated that both Potter and Necessary thought that the checks were legitimate. (J.A. at 184) Knowledge of the illegality of the scheme could NOT have been imparted to Potter because neither Necessary nor Frazier had that knowledge to impart; to hold otherwise would require Potter to have insight beyond that of his recruiters. Such a scenario simply cannot be sufficient to support the jury's verdict in this matter.

Finally, although Defendant's Motion for Acquittal at the end of the Government's case was denied by the trial court, the trial court made the

9

observation at Potter's sentencing that "there was substantial evidence that at Mr. Potter's trial that he was innocent in terms of his fraudulent intent. But again, the jury makes that determination, not me." (J.A. at 332)

The Defendant submits that because there was substantial evidence at trial to establish that there was <u>no</u> fraudulent intent on his part, coupled with the <u>absence</u> of any direct evidence as to his or his immediate recruiters having any knowledge of the illegal scheme, that there is ample reason to overturn the jury's verdict in this matter and to enter a judgment of acquittal.

## CONCLUSION

For the foregoing reasons, Appellant Phillip Potter respectfully requests that this court reverse and vacate this judgment and enter a judgment of acquittal.

## REQUEST FOR ORAL ARGUMENT

Oral argument would not aid the court's decisional process in this matter and is therefore waived by Appellant.

This 3rd day of February, 2014.

/s/ Joseph W. Rasnic
Joseph W. Rasnic
Virginia State Bar No. 34270
P.O. Box 864
Jonesville, Virginia 24263
276-346-4288
276-346-4290 (fax)

Attorney for Appellant,
Phillip Radford Potter

# **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    this brief contains <u>2,074</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

                                            /s/Joseph W. Rasnic
                                            Joseph W. Rasnic

Dated:  February 3, 2014

# **CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on February 3, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

    Ajay J. Alexander
    Steven R. Ramseyer
    OFFICE OF THE
      UNITED STATES ATTORNEY
    180 West Main Street
    Suite B19
    Abingdon, VA  24210
    (276) 628-4161

    *Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

                                    /s/ Karen R. Taylor
                                    Karen R. Taylor
                                    GIBSON MOORE APPELLATE SERVICES, LLC
                                    421 East Franklin Street, Suite 230
                                    Richmond, VA  23219